**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
_____
                              :
LAKIM SO'FINE a/k/a           :
RAYMOND CLARK,                 :      Civil Action No. 03-1501 (JBS)
                              :
            Petitioner,        :
                              :
        v.                     :              OPINION
                              :
LYDELL SHERRER, et al.,        :
                              :
            Respondents.       :
_____:
```

**APPEARANCES:**

> LAKIM SO'FINE a/k/a RAYMOND CLARK, Petitioner <u>Pro</u> <u>Se</u>
> #233781
> South Woods State Prison
> 215 Burlington Road South, P.O. Box 6000
> Bridgeton, New Jersey 08302
>
> JEFFREY S. BLITZ, ESQ.
> Atlantic County Prosecutor
> 1470 19th Avenue, P.O. Box 2002
> Mays Landing, New Jersey 08330
> Attorneys for Respondents

**SIMANDLE, District Judge**

This matter is before the Court on petitioner Lakim So'Fine's application for habeas corpus relief under 28 U.S.C. § 2254.  For the reasons stated below, the petition for habeas relief will be denied for failure to make a substantial showing of a federal statutory or constitutional deprivation.

## I.   BACKGROUND

### A.   Procedural History

Petitioner, Lakim So'Fine, a/k/a Raymond Clark ("So'Fine"), is presently confined at the South Woods State Prison in Bridgeton, New Jersey, serving an aggregate sentence of life imprisonment with a 30-year period of parole ineligibility.

In March 1991, So'Fine was convicted by jury trial on the following charges: conspiracy to commit armed robbery, first degree robbery, first degree felony murder, first degree murder, second degree possession of a weapon for an unlawful purpose, and third degree unlawful possession of a weapon.  On March 21, 1991, the court sentenced So'Fine to life imprisonment with a 30-year parole disqualifier on the purposeful murder conviction, and 20 years in prison with a 10-year parole disqualifier on the armed robbery count, to run concurrently with the life term imposed on the murder conviction.

So'Fine filed a direct appeal from this conviction and sentence, and the New Jersey Appellate Division affirmed the judgment in an unreported decision on February 9, 1993, State v. Clark, A-4612-90T4 (App. Div. Feb. 9, 1993).  (Ra105-Ra112).[1] The New Jersey Supreme Court denied certification on April 29, 1993, State v. Clark, 133 N.J. 440 (1993).  (Ra113).  Thereafter,

---

[1]  "Ra" refer to the appendix provided by the respondents with their answer to this petition.

2

sometime in 1993, So'Fine filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, with the United States District Court for the District of New Jersey. (Ra114-128). The district court denied the petition on April 11, 1995.[2] (Ra140-149). So'Fine appealed and the Third Circuit Court of Appeals affirmed the district court's decision on September 15, 1995. (Ra150). The United States Supreme Court denied certiorari on December 11, 1995, Clark v. Jones, 516 U.S. 833 (1995). (Ra151).

On March 18, 1996, So'Fine filed his first state motion for post-conviction relief ("PCR"), which was denied by the court on the ground that there was no prima facie showing with respect to the claim of ineffective assistance of trial counsel. However, because So'Fine did not have the trial transcripts, the court denied the PCR petition without prejudice to allow him to renew his petition once the transcripts had been obtained. So'Fine filed his second PCR petition on May 3, 1999. The court heard arguments and denied the petition on September 1, 2000. So'Fine appealed, and the Appellate Division affirmed by per curiam Opinion dated December 3, 2002. The New Jersey Supreme Court denied certification on February 20, 2003.

---

[2]  The claims asserted in So'Fine's first federal habeas petition, filed before the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") became effective on April 26, 1996, are not raised in this action.

3

So'Fine filed this federal habeas petition on April 7, 2003. The respondents answered the petition and provided the relevant state court record on September 21, 2004.  So'Fine filed a traverse on August 10, 2005.

B.  Factual Background

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference under 28 U.S.C. § 2254(e)(1), will simply reproduce the New Jersey Appellate Division's factual recitation:

> The jury could reasonably have found from the evidence that defendant's girlfriend, a prostitute, stole a firearm from a police officer who had paid for her services.  Defendant received the gun and gave it to his brother, Hashona Clark. The two subsequently agreed to rob Harry's Gold Jewelry Exchange because it was known to lack adequate security. According to their plan, defendant was to steal jewelry from the display cases while Hashona robbed the owner of his cash receipts.  In the course of the robbery, Hashona fired three shots at the owner, John Egan, who fell to his knees.  An additional two shots were fired into the victim at point blank range.  While this was taking place, defendant continued to take jewelry from the display case. The men escaped with approximately $30,000 in merchandise.
>
> Following the killing, defendant gave much of the stolen goods to his girlfriend.  Several informants alerted the police to the fact that Hashona and others were selling jewelry.  The apartment of defendant's girlfriend was searched, disclosing "felt display boards and jewelry price tags."  Hashona was later arrested and gave a statement implicating defendant in the robbery and murder.
>
> The police arrested defendant and his girlfriend in a rooming house in Richmond, Virginia.  Stolen jewelry was found in the apartment.  A search of defendant's wallet revealed pawn tickets for many of the stolen items. Defendant was transported to the Richmond Police Headquarters where he was apprised of his rights and interrogated.  Although defendant initially denied any

involvement in the robbery or the shooting, he ultimately
confessed after being told that his brother had identified
him as the "triggerman."  In his tape recorded statement,
defendant conceded that he gave the firearm to his brother
and that the two agreed to rob the jewelry store.  He also
claimed that Hashona "panicked" in the course of the robbery
and shot the owner.

(Ra106-107, Appellate Division per curiam Opinion decided
February 9, 1993).

## II.   CLAIMS FOR HABEAS RELIEF

So'Fine raises the following claims in his federal habeas
petition:[3] (1) petitioner was denied effective assistance of
trial counsel (a) when counsel conceded the predicate crime of
robbery, and (b) when counsel permitted the hearsay statement of
a witness who testified in the co-defendant's trial; and (2) the
erroneous and defective jury instruction on accomplice liability
violated petitioner's constitutional rights, namely, (a) the
instruction allowed the jury to erroneously apply accomplice
liability to the felony murder and conspiracy counts, and (b) the
instruction failed to inform the jury that petitioner could be
found guilty of a lesser included offense of murder, rather than
purposeful murder, if petitioner did not share the same criminal
intent as the principal.

---

[3]  The State does not contend that any of petitioner's
claims are unexhausted, and this Court finds that the claims have
been fully presented to the state courts for review.

III.  <u>STANDARD GOVERNING REVIEW OF § 2254 CLAIMS</u>

The Court recognizes that a <u>pro se</u> pleading is held to less stringent standards than more formal pleadings drafted by attorneys.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  Thus, a <u>pro se</u> habeas petition should be construed liberally and with a measure of tolerance.  <u>See</u> <u>Royce v. Hahn</u>, 151 F.3d 116, 118 (3d Cir. 1998); <u>Duarte v. Hurley</u>, 43 F. Supp.2d 504, 507 (D.N.J. 1999).  Because So'Fine is a <u>pro se</u> litigant, the Court will accord his petition the liberal construction intended for <u>pro se</u> petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts.  <u>See</u> 28 U.S.C. § 2254(e); <u>Duncan v. Morton</u>, 256 F.3d 189, 196 (3d Cir.), <u>cert</u>. <u>denied</u>, 122 S.Ct. 269 (2001); <u>Dickerson v. Vaughn</u>, 90 F.3d 87, 90 (3d Cir. 1996)(<i>citing</i> <u>Parke v. Raley</u>, 506 U.S. 20, 36 (1992)).  Section 2254(d) sets the standard for granting or denying a habeas writ:

(d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2)  resulted in a decision that was based on an

6

> unreasonable determination of the facts in light
> of the evidence presented in the State court
> proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme Court explained that subsection (d)(1) involves two clauses or conditions, one of which must be satisfied before a writ may issue.  The first clause, or condition, is referred to as the "contrary to" clause.  The second condition is the "unreasonable application" clause.  <u>Williams</u>, 529 U.S. at 412-13.  In the "contrary to" clause, "a federal court may grant the writ if the state arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."  <u>Id</u>.  Under the "unreasonable application" clause, a federal court may grant the writ if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of [the petitioner's] case."  <u>Id</u>. at 413.  Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  <u>Id</u>. at 411.  <u>See also</u> <u>Werts v. Vaughn</u>, 228 F.3d 178, 197 (3d Cir. 2000), <u>cert</u>. <u>denied</u>,

532 U.S. 980 (2001); Matteo v. Superintendent, SCI Albion, 171
F.3d 877, 891 (3d Cir. 1999), cert. denied sub nom Matteo v.
Brennan, 528 U.S. 824 (1999).

Consonant with Williams, the Third Circuit has held that §
2254(d)(1) requires a federal habeas court to make a two step
inquiry of the petitioner's claims.  First, the court must
examine the claims under the "contrary to" provision, identify
the applicable Supreme Court precedent and determine whether it
resolves petitioner's claims.  See Werts, 228 F.3d at 196-97;
Matteo, 171 F.3d at 888-891.  If the federal court determines
that the state court's decision was not "contrary to" applicable
Supreme Court precedent, then the court takes the second step of
the analysis under § 2254(d)(1), which is whether the state court
unreasonably applied the Supreme Court precedent in reaching its
decision.  Werts, 228 F.3d at 197.

This second step requires more than a disagreement with the
state court's ruling because the Supreme Court would have reached
a different result.  Id.  AEDPA prohibits such de novo review.
Rather, the federal habeas court must determine whether the state
court's application of the Supreme Court precedent was
objectively unreasonable.  Id.  In short, the federal court must
decide whether the state court's application of federal law, when
evaluated objectively and on the merits, resulted in an outcome
that cannot reasonably be justified under existing Supreme Court

precedent.  Id.; see also Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  Id.; see also 28 U.S.C. § 2254(e)(1).  The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence.  See Duncan, 256 F.3d at 196 (citing 28 U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

IV.  <u>ANALYSIS</u>

A.  <u>Ineffective Assistance of Trial Counsel</u>

So'Fine asserts two errors by his trial counsel, which he claims denied him effective assistance of counsel in violation of his Fifth, Sixth, and Fourteenth Amendment rights.  He complains that (1) counsel conceded the predicate crime of robbery in the opening statement and closing argument; and (2) counsel permitted the hearsay testimony of witness Nick Briggs to be entered into evidence at trial.[4]

---

[4] Nick Briggs did not testify at petitioner's trial, but did so at the co-defendant's trial.  It was this testimony at Hashona Clark's trial, about the weapon used during the incident, that was admitted into evidence at So'Fine's trial.

The "clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), is the standard for ineffective assistance of counsel as enunciated in Strickland v. Washington, 466 U.S. 668 (1984).  Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct.  Id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102(3d Cir. 2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir.), cert. denied, 534 U.S. 973 (2001).  Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  Strickland, 466 U.S. at 688.  "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances."  Id.  The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

> defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v. Wheatherwax, 77 F.3d 1425, 1431 (3d Cir.), cert. denied, 519 U.S. 1020 (1996).

If able to demonstrate deficient performance by counsel, petitioner must also show that counsel's substandard performance actually prejudiced his defense. Strickland, 466 U.S. at 687. Prejudice is shown if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The reviewing court must evaluate the effect of any errors in light of the totality of the evidence. Id. at 695-96. Thus, the petitioner must establish both deficient performance and resulting prejudice in order to state an ineffective assistance of counsel claim. Id. at 697. See also Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

1. *Conceding the Predicate Crime of Robbery*

In his second PCR motion, So'Fine argued that his trial counsel conceded that he was guilty of the predicate crime of robbery, which triggered petitioner's conviction for felony murder. This concession was made by counsel in the opening statement, as well as during the closing argument. On appeal

11

from denial of the PCR motion, the Appellate Division followed the two-part test as set forth in Strickland.  The court agreed with the PCR court findings that petitioner failed to meet either part of the two-prong Strickland test.[5]  The Appellate Division concluded that,

> "even if we were to find that defense counsel mistakenly conceded defendant's involvement in a robbery, the evidence of defendant's guilt, which included defendant's confession, was overwhelming.  Thus, defendant failed to meet the heavy burden that, but for the performance of his trial counsel, the result would have been different.

(Ra303, Appellate Division per curiam Opinion decided December 3, 2002).

    After reviewing the record, this Court finds nothing to indicate that the state court decisions on this issue were based on an unreasonable application of the facts in light of the evidence presented at trial.  Nor were the decisions contrary to established federal law.  The state PCR court found that

---

[5]  The PCR court determined that counsel conceded petitioner's guilt on the crime of robbery as a strategic or tactical decision.  Petitioner had already admitted to the robbery, by virtue of his statement to police officers.  Thus, his confession was coming in the case, and the defense needed to be credible.  "If there isn't a credible defense or at least the perception on the jury's part of a credible defense, the defense has very little persuasiveness to a jury."  (September 1, 2000 PCR transcript, 11T 23:21-24:8).  Furthermore, the PCR court noted that So'Fine was convicted of purposeful murder and his sentence for felony murder was merged within the purposeful murder sentence.  Thus, "any concession of the predicate felony (robbery) for felony murder would be irrelevant at this point in time in any event, or no harm.  The second prong of Strickland wouldn't be met as to that issue ... ."  (11T 25:1-11).

counsel's concession to petitioner's involvement in the robbery was a strategic decision that was not prejudicial based on petitioner's own confession, and the overwhelming evidence of his guilt at trial. So'Fine has not demonstrated that the state court decisions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified. Matteo, 171 F.3d at 891. Accordingly, this claim of ineffective assistance of counsel is without merit.

2. *The Stipulation as to Briggs' Statement*

So'Fine also claims trial counsel error and prejudice when counsel stipulated to the testimony of witness Nick Briggs given at Hashona Clark's trial. Petitioner asserts that the witness should have been subjected to testimony and cross-examination at trial. Both the PCR court and the Appellate Division found that Briggs' statement added credibility to So'Fine's contention that he was unaware that Hashona was going to shoot the owner. Thus, counsel's judgment in allowing the statement, rather than cross-examining the witness, constitutes a strategic or tactical decision, which is accorded a strong level of deference to the attorney's assessment of the case. Decisions by trial counsel with regard to examination of witnesses are strategic by nature and necessitate a strong level of deference to the attorney's assessment. See Diggs v. Owens, 833 F.2d 439, 444-45 (3d Cir. 1987), cert. denied, 485 U.S. 979 (1988).

This Court finds nothing to indicate that the state court decisions on this issue were based on an unreasonable application of the facts in light of the evidence presented at trial.  Nor were the courts' decisions contrary to established federal law set forth in <u>Strickland</u>.  So'Fine has not demonstrated that the state court decisions, when evaluated objectively and on the merits, resulted in an outcome that cannot be reasonably justified.  <u>Matteo</u>, 171 F.3d at 891.  Accordingly, this claim also will be denied for lack of merit.

B.  <u>Jury Instructions on Accomplice Liability</u>

So'Fine also asserts that the trial court denied him a fair trial and due process based on improper jury charges with respect to accomplice liability.  He first contends that the judge's instruction allowed the jury to erroneously apply accomplice liability to the felony murder and conspiracy offenses. (Petition, ¶ 12C).  Second, So'Fine alleges that the trial judge failed to convey to the jury that, "even if it concluded that the principal (co-defendant) committed purpose[ful] or knowing murder, the accomplice (petitioner) could be found guilty of the lesser included offense of murder if the accomplice (petitioner) did not share the same criminal intent as the principal." (Petition, ¶ 12D).

Questions relating to jury charges are normally matters of state law and are not cognizable in federal habeas review.  <u>See</u>

14

Engle v. Isaac, 456 U.S. 107 (1982); Henderson v. Kibbe, 431 U.S. 145 (1977); Zettlemoyer v. Fulcomer, 923 F.2d 284, 309 (3d Cir.), cert. denied, 502 U.S. 902 (1991); Grecco v. O'Lone, 661 F. Supp. 408, 412 (D.N.J. 1987)(Thompson, J.).  Only where the jury instruction is "so prejudicial as to amount to a violation of due process and fundamental fairness will a habeas corpus claim lie." Id.

Where a federal habeas petitioner challenges jury instructions given in a state criminal proceeding,

> [t]he only question for us is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  It is well established that the instruction "may not be judged in artificial isolation," but must be considered in the context of the instructions as a whole and the trial record.  In addition, in reviewing an ambiguous instruction ..., we inquire "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Constitution.  And we also bear in mind our previous admonition that we "have defined the category of infractions that violate 'fundamental fairness' very narrowly."  "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process Clause has limited operation."

Estelle v. McGuire, 502 U.S. 62, 72-73 (1991) (citations omitted).  Thus, the Due Process Clause is violated only where "the erroneous instructions have operated to lift the burden of proof on an essential element of an offense as defined by state law."  Smith v. Horn, 120 F.3d 400, 416 (1997), cert. denied, 522 U.S. 1109 (1998).  See also In re Winship, 397 U.S. 358, 364 (1970) ("the Due Process Clause protects the accused against

conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged"); <u>Sandstrom v. Montana</u>, 442 U.S. 510, 523 (1979) )(jury instructions that suggest a jury may convict without proving each element of a crime beyond a reasonable doubt violate the constitutional rights of the accused).

Where such a constitutional error has occurred, it is subject to "harmless error" analysis. <u>Smith v. Horn</u>, 120 F.3d at 416-17 (1997); <u>Neder v. United States</u>, 527 U.S. 1, 8-11 (1999). "[I]f the [federal habeas] court concludes from the record that the error had a 'substantial and injurious effect or influence' on the verdict, or if it is in 'grave doubt' whether that is so, the error cannot be deemed harmless." <u>Smith v. Horn</u>, 120 F.3d at 418 (citing <u>California v. Roy</u>, 519 U.S. 2, 5 (1996)).  In evaluating a challenged instruction,

> a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge.  If the charge as a whole is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution.

<u>Middleton v. McNeil</u>, 541 U.S. 433, 437 (2004) (internal quotations and citations omitted).

With respect to accomplice liability, the trial court instructed the jury as follows, in pertinent part:

> Accomplice -- I will charge you as to the law as it relates to accomplice liability as well as complicity.  Let me just

give you an overview before I get into it.  Accomplice and
complicity, the law on both, you will take into
consideration for specific offenses.  You will take
accomplice and complicity into effect when dealing with the
issues of robbery, the issue of armed robbery, the issue of
possession of a weapon for unlawful purpose, the issue of
unlawful possession of a weapon, and the issue of murder.
In other words, questions two through five, you will take
into consideration the law that I give you as it relates to
accomplice and complicity.  You do not take into
consideration the accomplice liability and the law on
complicity as it relates to the conspiracies that I just
reviewed with you or felony murder, and I will elaborate
upon it once I get to the charge of felony murder.  You may,
when you listen to the charge on accomplice liability and
complicity, think to yourself, "It seems like it is very
similar to a conspiracy."  In some instances, candidly, it
may be taken into consideration as being somewhat similar;
in others, it is not.  Suffice it to say, it is separate and
distinct, and I will attempt to explain to you what I mean
by accomplice and complicity. ...

. . .

Before I get into armed robbery, which is the additional
element [for the robbery charge], let me further ingest and
give you the law as it relates to accomplice liability and
complicity because, as I said to you, they will deal with --
you will deal with accomplice and complicity as it relates
to the robbery, the armed robbery, the weapons offenses, and
murder.  The pertinent part of the statute that deals with
accomplice and complicity states that:

> "A person is guilty of an offense if it is committed by
> his own conduct or the conduct of another person for
> which he is legally accountable or both."

This provision of the law means that not only is the person
who actually commits the crime -- excuse me.  This provision
of the law means that not only is the person who actually
commits the criminal act responsible for it, but one who is
legally accountable for the acts of another is also
responsible and punishable as if he committed the crime
himself.  To prove the defendant guilty of this crime, the
State must prove each of the following elements beyond a
reasonable doubt: The State must prove that Hashona Clark,
in this instance, committed the crime of robbery in this
instance.  The State must prove that the defendant was

17

legally accountable for the conduct of his brother, Hashona
Clark.  A person is legally accountable for the conduct of
another person if he is acting -- excuse me -- if he is an
accomplice of such other person in the commission of the
offense.  You have heard the attorneys make reference to
accomplice.  Let me explain to you the definition and the
law to follow in your analysis as to whether or not this
would or would not apply.  A person is an accomplice of
another person in the commission of a crime when, with the
-- (clears throat) excuse me -- Let me review it.  A person
is an accomplice of another person in the commission of a
crime when, with the purpose of promoting or facilitating
the commission of the crime, he aids, agrees, or attempts to
aid such other person in planning or committing it.  One
acts purposely with respect to his conduct or a result
thereof if it is his conscious object to engage in conduct
of that nature and to cause such a result.  If you find the
defendant purposely solicited or aided another person in the
commission of the crime, you must consider him as if he
committed the crime himself.  To prove the defendant's
criminal liability, the State does not have to prove his
accomplice status by direct evidence of a formal plan to
commit a crime.  There does not have to be verbal agreement
by all who are charged.  The proof may be circumstantial.
Participation and agreement can be established from conduct,
as well as the spoken words.  Mere presence at or near the
scene of a crime does not make one a participant in the
crime.  It is, however, a circumstance to be considered with
the other evidence in determining whether he was present as
an accomplice, but presence is not, in itself, conclusive
evidence of the fact.  Whether presence has any probative
value depends upon the total circumstances.  To constitute
guilt, there must exist a community of purpose and actual
participation in the crime committed.  While mere presence
at the scene of the perpetration of a crime does not render
a person a participant in it, proof that one is present at
the scene of the commission of the crime without
disapproving or opposing it is evidence from which, in
connection with other circumstances, it is possible for the
Jury to infer that he assented thereto, lent to it his
countenance and approval, and was thereby aiding or abetting
the same.  It depends upon the totality of the circumstances
as those circumstances appear from the evidence.  However,
one cannot be held to be an accomplice unless you find as a
fact that he possessed the same criminal state of mind that
is required to be proved against the person who actually
committed the act.  An accomplice may be convicted on proof
of the commission of a crime, though the person who it is

18

claimed the [sic] committed the crime has not been
prosecuted or convicted or has been convicted of a different
offense or degree of offenses or has an immunity from
prosecution or conviction or has been acquitted.  However,
one cannot be held to be an accomplice unless you find that
he possessed the same criminal state of mind that is
required to be proved against the person who actually
committed the criminal act.  In order to convict the
defendant as an accomplice to the crime charged, you must
find that the defendant had the purpose to participate in
that particular crime.  He must act with purpose of
promoting or facilitating the commission of the substantive
offense with which he is charged.  It is not sufficient to
prove only that the defendant had knowledge that the co-
defendant was going to commit the crime charged or that the
defendant knowingly facilitated the commission of the crime
charged.  The State must prove not only that the defendant
acted knowingly but also that it was the defendant's
conscious objective that the specific crime charged be
committed. ...

(Jury Instructions, March 1, 1991 trial transcript, 8T 20:13-
21:9, 23:4-26:14).

On direct appeal, the Appellate Division rejected
petitioner's jury instruction claims as totally meritless: "In
his pro se brief, defendant raises the additional points that (1)
the Prosecutor's comments were improper, and (2) the trial
court's instructions on accomplice liability, purposeful murder,
affirmative defenses, and permissible inferences were faulty.
All of these contentions clearly lack merit."  (Ra106).  So'Fine
later raised these issues about the accomplice liability jury
instructions in his PCR petition.  The PCR court noted that the
issue was "adversely resolved on direct appeal, thus disposing of
the issue."  (11T 28:20-21).  However, the court remarked that

this case was different from <u>Bielkiewicz</u>[6] because the co-defendants were not simultaneously tried.  The court further stated that the accomplice liability charge was not unfair to So'Fine.  "It was made clear what the defendant's state of mind, purpose, or knowledge, or intent had to be in order to convict this defendant of the charges which were made, and to the extent that there were lesser included's dealt with it, it was related to those lesser included offenses."  (11T at 29:9-14).

    1.  *Application of Accomplice Liability to Conspiracy and Felony Murder Charges.*

    First, So'Fine alleges that the trial judge's instructions allowed the jury to erroneously apply accomplice liability to the felony murder and conspiracy offenses.  This claim is completely baseless.  As set forth above, the trial court began its instruction on accomplice liability by telling the jury that they would consider accomplice liability and complicity when dealing with the issues of certain offenses charged, namely robbery, armed robbery, the weapons offenses, and the charge of murder.  The court expressly warned the jury that "You do not take into consideration the accomplice liability and the law on complicity

---

    [6] <u>State v. Bielkiewicz</u>, 267 N.J. Super. 520 (App. Div. 1993).  In <u>Bielkiewicz</u>, the court held that when a murder is committed by multiple persons, and the case is submitted to the jury under a theory of accomplice liability, the jury should be informed that even if it concludes that the principal committed purposeful or knowing murder, the accomplice can be found guilty of a lesser offense.  267 N.J. Super. at 533.

as it relates to the conspiracies that I just reviewed with you or felony murder ... ." (8T 20:13-21:2). When the court reached the instruction to the jury on the crime of felony murder, the court again reminded the jury:

> Members of the Jury, that leaves one remaining question for your consideration, and that is question 6, felony murder. Again, let me emphasize to you, and I apologize if I am being somewhat redundant, as it relates to felony murder, you are not -- I repeat -- not to consider accomplice liability or complicity.

(8T 38:23-39:4).

Therefore, there was no error in the trial court's instruction to the jury as to accomplice liability and the instructions plainly did not convey to the jury that accomplice liability could be applied to the charges of conspiracy and felony murder.

2. *Lack of Specific Charge on Accomplice Liability with Regard to the Lesser Included Offense of Murder.*

Petitioner finally argues that the trial judge failed to convey to the jury that, with respect to accomplice liability, they could find petitioner guilty of a lesser included offense of murder even if the jury concluded that the principal or co-defendant committed purposeful murder. The judge did not make this specific charge within its charge on accomplice liability generally. Nor did the court discuss this issue in its instruction to the jury on the murder charge.

The Appellate Division rejected this claim as meritless, without discussion, on direct appeal. (Ra106). Moreover, during the September 1, 2000 PCR hearing, the PCR court acknowledged that the claim was adversely resolved on direct appeal, but further elaborated that the trial judge had clearly instructed the jury on the state of mind, purpose, knowledge, or intent requirement in its general accomplice liability charge. Additionally, the PCR court stated that "under State v. Norman[7] I would conclude to the extent that it's necessarily before the Court that the charge with respect to accomplice liability was not unfair to the defendant in the context that was then and there presented." (11T 29:4-8).

Nevertheless, So'Fine continues to argue that, based on state law, the jury should have been expressly charged that even if the jury concludes that the principal committed purposeful or knowing murder, the accomplice could be found guilty of a lesser included offense. In particular, he bases his claim on Bielkiewicz, supra; State v. Harrington, 310 N.J. Super. 272 (App. Div. 1998); State v. Jackmon, 305 N.J. Super. 274 (App.

---

[7] State v. Norman, 151 N.J. 5, 37 (1997), in which the New Jersey Supreme Court held, consistent with Bielkiewicz, that jury instructions on accomplice liability must include an instruction that a defendant can be found guilty as an accomplice of a lesser included offense even though the principal is found guilty of the more serious offense.

Div. 1997); <u>State v. Williams</u>, 298 N.J. Super. 430 (App. Div. 1997).

Reviewing the jury instructions as a whole, this Court finds that there was no material error or omission in the jury charges given, let alone one which could have affected the outcome in this case. The instructions on accomplice liability fairly informed the jury that petitioner had to share the legally requisite intent as to every element in the applicable offenses, such as murder. Moreover, this case is distinguishable from <u>Bielkiewicz</u>, which involved the simultaneous trial of co-defendants and the possibility that the jury could have been confused as to whether it could find one defendant guilty as a principal of a greater offense and another defendant guilty only of a lesser included offense as an accomplice.

This Court further notes the overwhelming evidence of petitioner's intent to support the jury's finding of accomplice liability for purposeful or knowing murder. Specifically, the Appellate Division found:

> The State presented substantial evidence that defendant acted as an accomplice, N.J.S.A. 2C:2-6a and -6b(3), and that he shared Hashona's intent to kill the victim, <u>State v. White</u>, 98 N.J. 122, 129 (1984). Defendant obtained the gun used to shoot the victim and gave it to Hashona on the day of the incident. Defendant's confession disclosed that he and Hashona carefully planned the robbery. The victim was wounded and thereby disabled before Hashona summarily executed him. Defendant coolly gathered the jewelry from the display case and, along with Hashona, escaped with $30,000 worth of merchandise. Giving the State the benefit of its favorable testimony as well as all reasonable

23

> inferences, see State v. Reyes, 50 N.J. 454, 459 (1967), a
> jury could find defendant guilty of purposeful murder beyond
> a reasonable doubt.

(Ra110).

As noted earlier, this Court is bound by the state courts'
conclusions as to state law.  "[T]he fact that [an] instruction
was allegedly incorrect under state law is not a basis for habeas
relief."  Estelle v. McGuire, 502 U.S. at 71-72.  Rather, the
district court must consider "'whether the ailing instruction by
itself so infected the entire trial that the resulting conviction
violates due process,' ... not merely whether 'the instruction is
undesirable, erroneous, or even universally condemned.'"
Henderson v. Kibbe, 431 U.S. 145, 154 (1977)(quoting Cupp v.
Naughten, 414 U.S. 141, 146-47 (1973)).  Moreover, "[t]he burden
of demonstrating that an erroneous instruction was so prejudicial
that it will support a collateral attack on the constitutional
validity of a state's court judgment is even greater than the
showing required to establish plain error on direct appeal."  Id.

With respect to the "accomplice liability" instructions at
issue here, the decision of the state court was not contrary to
clearly established Federal law, nor did it involve an
unreasonable application of clearly established Federal law, nor
was it based on an unreasonable determination of the facts.
Taken as a whole, the instructions did not absolve the state of
its obligation to prove beyond a reasonable doubt the intent

element of any of the offenses charged.  While the instructions
may not have conformed to the state-law rule announced in
Bielkiewicz, the instructions here specifically addressed the
issue of petitioner's intent and directed the jury to acquit if
they did not find all elements of the offense of purposeful or
knowing murder proven beyond a reasonable doubt.  See Duncan v.
Morton, 256 F.3d 189, 203-04 (3d Cir. 2001) (absence of
Bielkiewicz instruction, when viewed in the context of a
particular case, may not so infect the trial with unfairness as
to violate defendant's due process rights), cert. denied, 534
U.S. 919 (2001).  At most, petitioner's claim of fault is based
on omission, which the Supreme Court has stated is less serious
than a misstatement of the law.  See Henderson, 431 U.S. at 155
("An omission, or an incomplete instruction, is less likely to be
prejudicial than a misstatement of the law").

Therefore, this Court concludes that the absence of the
specific instruction as alleged necessary by petitioner, which
was later required by Bielkiewicz, when viewed in the context of
this case, did not so infect the trial with unfairness as to
violate So'Fine's due process rights.  Accordingly, this claim as
to faulty jury instructions is denied for lack of substantive
merit.

25

V.   CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.   See Third Circuit Local Appellate Rule 22.2.   The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.   Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

### CONCLUSION

For the foregoing reasons, this Court finds that So'Fine's § 2254 habeas petition should be denied on the merits.   A certificate of appealability will not issue.   An appropriate Order accompanies this Opinion.


**s/ Jerome B. Simandle**
JEROME B. SIMANDLE
U.S. District Judge


DATED:   **October 24, 2005**

26